FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(1) Jermaine Dixon    51921-019
(Name of Plaintiff)    (Inmate Number)

FCI Schuylkill P.O. Box # 759
(Address) Minersville, PA. 17954

(2) _____
(Name of Plaintiff)    (Inmate Number)

_____
(Address)

(Each named party must be numbered,
and all names must be printed or typed)

vs.

(1) United States of America. 2) R.A.
Perdue, Warden.
(2) Ellen Mase, Clincal Director.
(4) J. Simmonson, HSA. (5) David Steffan PA
(3) (6) McKinney, Assistance Warden
(Names of Defendants)

(Each named party must be numbered,
and all names must be printed or typed)

1:17cv1716
(Case Number)

CIVIL COMPLAINT

FILED
SCRANTON

SEP 21 2017

PER _____
DEPUTY CLERK

TO BE FILED UNDER: ____ 42 U.S.C. § 1983 - STATE OFFICIALS

____ 28 U.S.C. § 1331 - FEDERAL OFFICIALS

I.    PREVIOUS LAWSUITS    __X__ 28 U.S.C. § 2672-Federal Tort Claim Act, (FTCA)

A.    If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

NONE

1

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A. Is there a prisoner grievance procedure available at your present institution? __X__ Yes ____No

B. Have you fully exhausted your available administrative remedies regarding each of your present claims? __X__ Yes ____No

C. If your answer to "B" is Yes:

1. What steps did you take? __BP-8, BP-9, BP-10 & Bp-11__

2. What was the result? __(BP-8 Denied) (BP-9 Denied) (BP-10 Denied)__
__BP-11 never answered__

D. If your answer to "B" is No, explain why not: _____

## III. DEFENDANTS

(1) Name of first defendant: __United States__

Employed as _____ at _____
Mailing address: _____

(2) Name of second defendant: __R.A. Perdue__
Employed as __Warden__ at __FCI Schuylkill__
Mailing address: __P.O. Box 750 Minersville, PA 17954__

(3) Name of third defendant: __Associate Warden: McKinney__
Employed as __Asso.Warden__ at __FCI Schuylkill__
Mailing address: __P.O. Box 750, Minersville, PA 17954-0754__

(List any additional defendants, their employment, and addresses on extra sheets if necessary)

## IV. STATEMENT OF CLAIM

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets if necessary.)

1. __At all time Pro-se prisoner is still at FCI Schuylkill.__
__Defendant the United States of America__
__Defendant the United States Bureau of Prisons, (BOP)__

2

III. DEFENDANTS

4) Dr Ellen Mace-Leibson
   Employed as Clinical director at F.C.I schuylkill
   Mailing address: P.O. Box 750 Minersville P.A. 17954

5) J. Simonson
   Employed as Health Service Administrator at F.C.I shuylkill
   Mailing address: P.O. Box 750 Minersville P.A. 17954

6) David Steffan
   Employed as Physicians assistant at F.C.I schuylkill
   Mailing address: P.O. Box 750 Minersville P.A. 17954

2.  Defendant R.A. Perdue is the Warden of Federal Correctional Institution Schuylkill and was personally involved in Plaintiff's medical care.

3.  Defendant Associate Warden McKinney is the Assoicate Warden of Federal Correctiona; Institution Schuylkill and was personally involved in Plaintiff's medical care.

## V. RELIEF

1.  Declare that Defendant Dr. Ellen Mace-Leibson violated Plaintiff's Eight Amendment right to medical care.
    Declare that Defendant P.A. David Steffan violated Plaintiff's 8th Amendment right to medical care.

2.  Declare that defendant United States violated Plaintiff's Eight Amendment right when it failed to protect him from Deliberate indiffence to medical needs.

3.  Award compensatory damages in the sum of $1,000,000., for Plaintiff's physical and emotional injuries, and punitive damages against each; and grant Plaintiff such other relief as it may appear Plaintiff is entitiled to.

4.  Defendant Dr. Ellen Mace-Leibson is the Clinical Director of Federal Correctional Institution Schuylkill and was personally involved in Plaintiff's medical care.

5.  Defendant J. Simmonson is the Health Services Administrator at FCI Schuylkill and was personally involved in Plaintiff's medical care.

6.  Defendand David Steffan is a P.A. at FCI Schuylkill and was personally involved in medical care.

**FACTUAL ALLEGATIONS**

3

7. Plaintiff is a Federal Prisoner incarcerated at FCI Schuylkill in Minersville, PA 17954. In 2014 Plaintiff began experiencing pain from a bullet that had been lodged in Petitioners leg since the 1990's. Plaintiff asked to be sent out to a hospital to have the bullet removed, but was told by P.A. Steffan that would not be possible because of cost. On September 29, 2014, the bullet was removed surgically by Dr. Mase and P.A. Steffan.

8. During the time period of Plaintiff's medical treatment while under the care of BOP, including his surgery and follow-up treatment, medical staff at FCI Schuylkill and others at the institution with authority and control over his medical care breached the duty they owed to Plaintiff by failing to provide Plaintiff with adequate medical care.

9. After numerous trips to medical sick-call, and two BP-8's, Plaintiff was finally called on May 18th 2015 to medical, to see Dr. Mase.

10. On this visit Plaintiff was seen by both Dr. Mase and P.A. Steffan. Plaintiff explained that I could not sleep on my left side because my leg would go numb and I could not bend my leg and it was also swollen which caused a great deal of pain.

11. Plaintiff was told by Dr. Mase that it seemed as though I had arthritis & sciatica, without ever once examining my leg. Which P.A. Steffan agreed with her.

12. Dr. Mase ordered on this day, May 18, 2015, an X-ray of my lower back.

13. After that day, I began to exeprience more pain, I did as was suggested by Dr. Mase to apply ice and elevate my leg.

14. I returned to medical in June 2015, I filled out a sick-call sheet and was told by P.A. Steffan that I would be plcaed on the Call-Out yet, I was never called again.

15. On July 7, 2015, I went to medical-Open House to see if I could be seen while there I spoke to Assoicate Warden McKinney and explained to her that I was in a great deal of pain and that I wasn't being placed on the Call-Out for medicak. I showed her my leg which was swollen.

4

16. A.W. McKinney then went over to Dr. Mase, spoke to her which I could not hear. After said conversation between Dr. Mase and A.W. McKinney, Plaintiff was told by The A.W. McKinney to send her an email.

17. I got back to my housing unit and did as I was told by A.W. Mc-Kinney and sent her an email which was never answered.

18. On July 23rd, 2015 I again spoke to A.W. McKinney during Main-Line; showed her my leg and told her that I was in even more pain. And I never received an email back, she told me to send her a reminder.

19. I did not get a reply to my emails until August 24th, 2015.

20. On September 4, 2015, I again put in a BP-8 Administrative Remedy which I received on September 24th, 2015. I was denied medical attention by J. Simonson, HSA.

21. On September 24, 2015, I went to medical again; when I arrived at medical, Plaintiff spoke with J. Simonson, he told me there was nothing he could do for me. He said I was seen by Dr. Mase on May 18th, 2015.

22. I showed him my leg which was black and blue and swollen.

23. I was then taken inside Steffan's office and he said "There is nothing we can do for you. You have arthritis".

24. I rolled up my pant leg showed him my leg and knee. I explained to him that I could not bend it and I was in a lot of pain.

25. I told him that it was hot swollen and my calf was beginning to atrophy.

26. Steffan also told me my leg and knee area where the swelling was, was not swollen nor was it hot and that I should continue to ICE and take naproxen.

27. Steffan took out a tape measure and measured both calfs and told me they where the same size.

28. While he was telling me this, I was sitting on the examining table P.A. Rush walked in looked at my leg and then reached over and squeezed the area around and above Plaintiff knee.

5

29. A sharp pain went threw Plaintiff's leg. Plaintiff then pushed P.A. Rush hand away because of the pain.

30. P.A. Rush felt both of Plaintiff's knees and told Simonson and Steffan that my knee was hot.

31. He also touched the discolored side of my leg and told Steffan that he should run test on my leg using medical terms that I wasn't familiar with.

32. Simonson then ordered a Xray. While in the X-ray room I began to remove my pants, Simonson said that my leg above and around my leg looked bad. Plaintiff then asked why didn't he say that to Steffan? He never responded.

33. Simonson then asked Plaintiff why Plaintiff had a scar on my leg?

34. Plaintiff told Simonson that there was a Rod in Plaintiff's leg. Simonson also asked why Plaintiff didn't tell him there was a Rod in Plaintiff's leg? Which Plaintiff replied: All of that information was in Plaintiff medical file, if he had bothered to read it when he denied Plaintiff's BP-8 for medical attention.

35. After the X-ray I was taken back into the office with Steffan, he told Simonson all I wanted was a MRI, which Plaintiff stated that wouldn't be a bad thing considering he, P.A. Steffan didn't know what was wrong with me.

36. P.A. Steffan, again told me he knew what was wrong with Plaintiff, he told Plaintiff that it was only artheitis. And I should continue to ICE and take naproxen.

37. P.A. Steffan, then made an appointment for Plaintiff to see Dr. Mase on September 28th, 2015. He also gave Plaintiff a Lay-In from Plaintiff's Prison Job assignment.

38. On September 28th, 2015, the prison was on lock-down for bad weather (Fog) so all call-out's were cancelled; Plaintiff was never placed back on any call-outs for medical.

39. Tuesday September 29th, 2015, Plaintiff again went to medical and was again told, I would be placed on the call-out. I then went into the kitchen to try to find Simonson or any of the excutive staff.

40. While in the kitchen, Plaintiff ran into Simonson, showed him the swollen leg, which he said had gotten worst. He told Plaintiff he would leave a email for Plaintiff to be seen on October 2nd, 2015.

41. On Oct. 2, 2015, Plaintiff again went to medical at 6:30 Am as told by Simonson. When Plaintiff arrived at medical, Plaintiff spoke to the Pharmacist who told Plaintiff she was the only one there and there was no email from Simonson concerning Plaintiff.

42. Plaintiff left medical in search of Simonson or excecutive staff. Plaintiff ran into Lt. Raul who asked why I was limping. I explained

6

to him I was in a lot of pain and I could barley walk. He asked to see my leg, so Plaintiff showed him. When he saw it, he said, "It looked really bad", touched it and continued, "Its hot too".

43. Lt. Raul, then called medical and told someone on the line that I needed to be seen immediately.

44. Plaintiff again went to medical and was seen by Shiffman. Plaintiff was brought into examining room was asked questions about Plaintiff's leg. Plaintiff's temperture was taken which was normal, but the swollen leg temperture was in the upper nineties.

45. Plaintiff was advised by Shiffman that Dr. Mase would be in shortly.

46. When Dr. Mase came in Plaintiff was advised to remove Plaintiff's pants.

47. When Dr. Mase saw Plaintiff, she said, "Holy Shit!" She then felt and squeezed around my lower thigh and knee area. Plaintiff was told by Dr. Mase the leg would have to be lanced.

48. Dr. Mase then proceded to lance the swollen area which produced the bad smelling puss and black blood.

49. Plaintiff was then given antibiotics and pain pills.

50. On Oct 5th, 2015, Plaintiff went to medical to have bandages changed; this procedure was done both by

51) Plaintiff stated it looked the same way as the day he saw Plaintiff on September 24, when he P.A. Steffan told Plaintiff he had arthritis.

52) P.A. Steffan then stated no wonder you couldn't bend your leg.

53) On Oct 8, 2015 I was on a callout for medical, I told P.A. Steffan I was still experiencing the same pain as before numbness swelling and was still unable to bend my leg. He told me I should not be concerned with that, because that was normal because of the infection.

54) On October 13, 2015 Plaintiff again went to medical open house Plaintiff spoke to P.A. Steffan who told me he would no longer be changing the bandages. He told Plaintiff that Plaintiff should start changing them myself.

55) Plaintiff again told Steffan the pain was still very bad and I was still not able to bend my leg and I was still having trouble walking. He gave me a pamphlet about infection and told Plaintiff there was nothing else that could be done

56) Plaintiff on October 13, 2015 spoke to Dr Mase and Simonson about the pain and swelling not going away, and was told by both there was nothing else that could be done because Plaintiff had arthritis

57) Plaintiff on October 27, 2015 submitted a BP-9 to warden R.A. Perdue which he also denied because he claimed that plaintiff recieved proper medical care.

58) Plaintiff spoke to the warden at mainline on January 5, 2016 about response to plaintiffs BP-9 by which warden R.A Perdue stated he would not change his decision also showed him my leg so he could see the wound was not closed and that another hole was beginning to open up. which the warden replied he wasnt a doctor and was nothing he could do for me.

59) Finally Plaintiff was taken out on April 19, 2016 to Hershey Medical Center. Plaintiff spoke with Dr Copeland at Hershey about what needed to be done about Plaintiffs leg.

60) Doctor Copeland advised Plaintiff that Plaintiff needed to have surgery to remove the pins in knees and rods in leg because the infection was to far gone. It was now in the femur

61) Negligent Failure to Protect

62) Medical staff at FCI Schuylkill, including PA David Steffan and Dr Ellen Mace-Leibson, failed to test for and diagnose a serious infection that developed in Plaintiffs left leg after the September 29, 2014 surgery.

63) Plaintiff complained repeatedly to medical staff about recurring pain, swelling and heat in plaintiffs left knee. Plaintiff also reported that Plaintiff was not able to bend knee or put any pressure on the leg or walk normally because the pain was so intense.

64) Instead of reviewing and evaluating petitioner's symptoms, medical staff dismissed petitioners complaints and told pettioner repeatedly that he had arthritis and should take over the counter medication from commissary for pettioner's pain.

65) When the over-the-counter medication did not help with the pain and Plaintiffs symptoms continued and Petitioner complained, Petitioner was met with the same responses from medical staff.

66) Because the infection was allowed to spread, it reached Plaintiff's left femur, and Plaintiff contracted osteomyelitis.

67) Plaintiff then required testing, evaluation, and eventually surgery at Hershey Medical Center to clean the infection from the bone.

68) BOP staff delayed providing this outside testing and treatment and delayed providing the necessary blood tests and other tests ordered by Hershey.

69) Throughout the two-year period, medical staff failed to supervise and monitor the treatment Plaintiff received and failed to make sure that the treatment was appropriate and timely.

70) BOP medical staff and non-medical staff failed to provide a safe and healthy environment for Petitioners to undergo the September 29, 2014 surgery and in which to re-cover from that surgery, as conditions in the prison, including the inmates' showers and cells, are unsanitary and conducive to the spread of infection

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___9-18-17___ day of ___9-18_____, 20 _17_.

_____
(Signature of Plaintiff)

4

Jermaine Dixon 51921-019
F.C.I Schuylkill
P.O. Box 759
Minersville, PA 17954

RECEIVED
SCRANTON
SEP 21 2017
PER _____
DEPUTY CLERK

9/19/17

◇51921-019◇
Usdistrict Court
PO BOX 1148
Scranton, PA 18501
United States

FCI/FPC SCHUYLKILL
PO BOX 700
MINERSVILLE, PA 17954

THE ENCLOSED LETTER WAS PROCESSED THROUGH SPECIAL MAILING PROCEDURES FOR FORWARDING TO YOU. THE LETTER HAS NEITHER BEEN OPENED NOR INSPECTED. IF THE WRITER RAISES A QUESTION OR PROBLEM OVER WHICH THIS FACILITY HAS JURISDICTION, YOU MAY WISH TO RETURN THE MATERIAL FOR FURTHER INFORMATION OR CLARIFICATION. IF THE WRITER ENCLOSES CORRESPONDENCE FOR FORWARDING TO ANOTHER ADDRESSEE, PLEASE RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.